UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **NANCY SNYDER,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No. 1:18-CV-03254-LLM-RGV** |
| **DELTA AIR LINES, INC.,** | |
| **Defendant.** | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CAUSE OF ACTION**

## I.     INTRODUCTION

Plaintiff Nancy Snyder ("Snyder") was employed as an Atlanta-based Flight Attendant by Defendant Delta Air Lines, Inc. ("Delta") until she was terminated on May 17, 2017 because she tested positive for cocaine on a random drug test mandated by federal law ("FAA drug test").  Under federal law, her positive FAA drug test legally disqualified her from working as a Flight Attendant at Delta or any other commercial air carrier.

On July 6, 2018, Snyder filed this suit alleging six counts that failed to state any cause of action.  Dkt. 1.  On July 25, 2018, Pursuant to Fed. R. Civ. P. 12(b)(6), Delta moved to dismiss Snyder's Complaint.  Dkt. 6.

1

On August 29, 2016, Snyder filed a First Amended Complaint ("FAC"). Snyder's FAC added no new alleged causes of actions but added a small number of allegations that are actually not factual allegations and can thus be ignored in revising a Rule 12(b)(6) motion to dismiss.  Delta files this motion to dismiss Snyder's FAC.  The new allegations in Snyder's FAC only confirm that she has plead no facts that could plausibly support a cause of action.

Snyder's five counts are (1) that she was terminated because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626 ("ADEA") when, based on her allegations in her FAC, she was disqualified from her Flight Attendant employment by federal law due to her positive FAA drug test; (2) an unspecified claim under Florida Civil Rights Act ("FCRA") that does not even purport to state a claim; (3) an unspecified claim of "hostile work environment" under no specified statute because she was terminated for her positive FAA drug test; (4) a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. sq. ("Title VII") with no allegation of any form of discrimination prohibited by Title VII; and (5) a claim for wrongful termination by an at-will employee under Georgia law which has prohibited such a claim for decades.

For the reasons set forth below, Delta requests that this suit be dismissed.

## II.  ALLEGATIONS IN SNYDER'S FAC

Snyder was employed as a Delta Flight Attendant based in Atlanta from March 12, 2000 until her termination on May 17, 2017.  Dkt. 11, ¶¶ 2, 8, 33.  She alleges that at the time of her termination, she was age 63.  Dkt. 11, ¶ 35.[1]

Snyder alleges that, on an unspecified date in April 2017, after returning to Atlanta from a flight from Lima, Peru, she was randomly selected for drug testing. Dkt. 11, ¶ 9.  She alleges that she arrived at the lab for testing and gave a urine sample for drug testing to a person she refers to as a lab technician or a collector (hereinafter "collector").  Dkt. 11, ¶¶ 9, 12.  She alleges that, after providing her sample, the collector put her urine into two tubes that were sealed.  Dkt. 11, ¶ 13. She alleges that, as she was washing her hands and preparing to leave, the collector intentionally broke the seal on one of the tubes and stated to her than she had to change the tube.  Dkt. 11, ¶ 14.  She alleges that she picked up a new tube and handed it to the collector.  Dkt. 11, ¶ 15.  She alleges that she left the collection area.  Dkt. 11, ¶ 15.

Snyder alleges that, on April 25, 2017, she received a telephone call informing her that her FAA drug test was positive for cocaine.  Dkt. 11, ¶ 19.  She

---

[1] Thus, Delta hired her when she was either 45 or 46 years old.  Dkt. 11, ¶ 8.

alleges that she had never used cocaine.  Dkt. 11, ¶ 20.  She alleges that, on April 25, 2017, she immediately emailed her supervisor, "explaining what had happened and requesting a retest."  Dkt. 11, ¶ 22.

Snyder's August 25, 2017 email to her supervisor, Stephanie Yen ("Yen"), is attached hereto as Exhibit "A."[2]  In her email to Yen, Snyder did not contend that there was any issue or problem with her drug test collection but simply claimed that the has never done drugs.  Exhibit "A."  She also stated that she had requested to have her split B sample (i.e., the second vial of her urine collected by the collector) also tested.  Id.

 Snyder alleges that, on April 26, 2017, she was informed that she was being suspended by Delta pending an investigation.  Dkt. 11, ¶ 23.

Snyder alleges that, from April 27, 2017 to May 3, 2017, she went to her personal primary care physician and then had various urine, hair, and blood tests that she claims tested negative for cocaine.  Dkt. 11, ¶¶ 25-32.  She alleges that she informed Delta about these alleged negative tests and that Delta informed her that

---

[2] As Snyder referred to and relied upon this email in her FAC, Delta can attach the email to this motion without converting this motion to a motion for summary judgment.  Kynes v. PNC Mort., 2013 U.S. Dist. LEXIS 125309 ** 9-13 (N.D. Ga. July 25, 2013, adopted, 2013 U.S. Dist.  LEXIS 125049 (N.D. Ga. Aug. 30, 2013)(and decisions cited therein).

it did not have to consider such private post-FAA tests (as explained below,

Snyder's private tests could not be considered under federal law).  Id.

     Snyder alleges that Delta informed her that she was terminated because of

her positive FAA drug test.  Dkt. 11, ¶¶ 33, 35.

## III.  <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A.  <u>Standards For Rule 12(b)(6) Motions</u>

     To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  <u>Ogletree v. Necco</u>, 2016 U.S.

Dist. LEXIS 165566 * 13 (N.D. Ga., Nov. 9, 2016), <u>adopted</u>, 2016 U.S. Dist.

LEXIS 165564 (N.D. Ga., Nov. 30, 2016) (<u>quoting</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

(2009), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

     "Although the factual allegations of a complaint must generally be taken as

true when ruling on a motion to dismiss, a court should not accept 'conclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as

facts.'" <u>Ogletree</u>, at * 13 (<u>quoting</u> <u>Oxford Asset Mgmt., Ltd. v. Jaharis</u>, 297 F.3d

1182, 1188 (11th Cir. 2002).  "While a complaint need not contain detailed factual

allegations, mere 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'"  Id.  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 678-79.  "Rather, plaintiffs are required to make factual allegations that are 'enough to raise a right to relief above the speculative level.'" <u>Ogletree</u>, at * 14 (quoting <u>Twombly</u>, 550 U.S. at 555).  "Complaints must 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" <u>Id</u>. (quoting <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc</u>., 500 F.3d 1276, 1282-83 (11th Cir. 2007)).

### B.  The Law Of FAA Drug Tests

Under federal law, Delta Flight Attendants are classified under FAA regulations as "aviation personnel performing safety-sensitive functions."  14 C.F.R. § 120.121(a).  As such, under the Omnibus Transportation Employee Testing Act of 1991 ("OTETA"), Snyder was subject to random drug testing ("FAA drug test").  49 U.S.C. § 45102(a).

FAA regulations set forth a comprehensive scheme regarding FAA drug tests. <u>MN Airlines, Inc. v. Levander</u>, 2015 U.S. Dist. LEXIS 114251 * 3 (D. Minn. Aug. 28, 2015).  For example, the FAA regulations set forth the procedures at the specimen collection site, the testing laboratory, and the review by the airline's

Medical Review Officer ("MRO").  See e.g. 49 CFR § 40.71.  One of the five groups of drugs that are tested for is cocaine.  49 CFR § 40.85(b).

In an FAA drug test, the employee provides urine (referred to as a "void") into a cup and hands the cup to a trained collector.  49 CFR § 40.31.  The collector is to collect at least 45 millileters of urine from the employee.  49 CFR § 40.65(a). The collector then pours at least 30 millileters from the collection container to a first specimen bottle, referred to as the primary or "A" specimen.  49 CFR § 40.71(b)(1).  The collector then pours at least 15 millieters into a second specimen bottle, referred to as the split or "B" specimen.  49 CFR § 40.71(b)(2).  The collector then places a lid or cap on each specimen bottle and seals each bottle with a tamper-evident seal.  49 CFR § 40.71(b)(4) and (5).

If for some reason one of the specimen bottles is unsealed at the collection site as Snyder alleges in her FAC, there is no regulation or other law that would make it improper for the collector to pour the urine from the unsealed vial into a new vial and seal that vial.  Id.  Instead, the only prohibition is that the collector cannot combine urine from separate voids (i.e., separate uninations by the employee) into one specimen bottle.  49 CFR. § 40.65(a)(3).

The form that is used to document the completed collection at the collection site is called the Federal Drug Testing Custody and Control Form or "CCF."  49

CFR § 40.45(a).  At the completion of the collection process, the employee reads

and signs a certification statement on the CCF that the required collection steps

were completed by the employee and the collector and in the presence of the

employee.  49 CFR. § 40.73(a)(1).  Snyder does not (and could not) allege that

those required steps were not followed at her collection, and she does not (and

could not) allege that, before leaving the collection room, she failed or refused to

sign the certificaction statement on the CCF certifying that she saw the collector

finally seal both specimen vials.

Under the regulations, the collector then sends the two specimens to a

federally approved drug testing laboratory.  49 CFR § 40.91.

The first test performed on the primary specimen of urine is an immunoassy

test or "initial test."  49 CFR § 40.87.  See also Bluestein v. DOT, 908 F.2d 451

(9th Cir. 1981)(summarizing the procedures of FAA drug tests).  If that initial test

is positive, the sample is then tested with a confirmatory GCMS test that, for

example in the case of cocaine, actually identifies the existence of the cocaine

metabolite in the urine (i.e., does not create any risk for a false positive test).  Id.

If the test is positive on the confirmatory GCMS test, the airline and the airline's

Medical Review Officer ("MRO") are notified.  Id.  The airline is then required by

law to supsend the employee pending the MRO review.  49 CFR § 40.23.

After learning that his or her specimen "A" tested positive, the employee can request that his or her specimen "B" be tested. 49 CFR § 40.171. If such a request is made, the lab that tested specimen "A" then sends specimen "B" to a second federally approved laboratory, which then follows the above described testing procedures on the employee's specimen "B." 49 CFR § 40.175. If the GCMS test on specimen "B" is positive, it is considered a reconfirmation of the positive GCMS test on specimen "A," and the lab reports that reconfirmation to the MRO who then reports it to the employer's Designated Employer Representative ("DER"). 49 CFR § 40.183; 49 CFR § 40.187. Snyder requested that her specimen "B" be tested. Exhibit "A." She does not (and could not) allege that her specimen "B" was not also confirmed positive for cocaine.

As part of the MRO review, the MRO communicates with the employee about the positive drug test result. 49 CFR § 40.129. While the employee may simply deny that he or she used the relevant drug (which under OTETA does not alter the positive test result or avoid disqualification), the employee may also attempt to provide a legitimate medical explanation for the positive test. 49 CFR § 40.137(b). In that instance, the MRO seeks to determine from the employee if there might be some a legitimate medical explanation for the positive drug test (such as a legally prescribed drug taken properly). 49 CFR § 40.137(b). The

employee has the burden of proof to present a legitimate medical explanation.  49 CFR § 40.137(c).  Snyder does not (and could not) allege that she proffered or had any medical explanation for her positive cocaine test.

The FAA regulations also state what an MRO is prohibited from considering in determining whether to verify a positive FAA drug test.  49 CFR § 151. Relevant to Snyder's FAC allegations about her private post-FAA tests, the FAA directs MROs that:

> You must not consider any evidence from tests of urine sample or other bodily fluids or tissues (e.g., blood or hair samples) that are not collected or tested in accordance with this part.  For example, if an employee tells you he went to his own physican, provided a urine specimen, sent it to a laboratory, and received a negative test result questioning the identify of his DOT speciment, you are required to ignore this test result.

49 CFR § 40.151.  Thus, Snyder's alleged private tests could not have been considered under federal law.  Id.[3]

---

[3] Snyder's alleged private drug tests taken several days after her FAA drug test not only did not follow the rigorous FAA procedures but would say nothing about whether Snyder's FAA drug sample contained cocaine.  For example, her urine tests several days later would be meaningless as cocaine can leave a person's urine within 48-72 hours after use.  See Meza v. Dept. Homeland Sec., 275 Fed. Appx. 987, 990 (Fed. Cir. Apr. 23, 2008).  A hair strand test can fail to detect cocaine only used once in a recent time frame and/or when the cocaine level necessary for a positive result is higher on the hair test than on the FAA urine test.  See Id.

When a Flight Attendant has an MRO-verified positive FAA drug test, he or she is thereby disqualified from serving as a Flight Attendant both at his or her current airline or any other airline covered by the FAA regulations.  49 U.S.C. § 45103(c)(1); 14 C.F.R. § 120.111(e)(2).  OTETA allows airlines to summarily terminate an employee for a positive FAA drug test.  MN Airlines, supra, at * 4.  "Indeed, the FAA's sample drug testing policy for airlines provides that an employee who tests positive for drugs 'will be terminated.'"  Id. (citation omitted).

### C.   **Snyder's ADEA Should Be Dismissed.**

#### 1.   **Snyder's ADEA Claim Is Time-Barred.**

A plaintiff is required to file an ADEA lawsuit within 90 days of receipt of the EEOC right to sue letter ("RTS").  Perrymond v. Lockheed Martin Corp., 2010 U.S. Dist. LEXIS 21759 (Feb. 3, 2010), adopted in relevant part, 2010 U.S. Dist. LEXIS 21722 (N.D. Ga. March 9, 2010) (granting motion to dismiss where court presumed that plaintiff received RTS three business days after it was mailed by EEOC and that presumed receipt date was more than 90 days before plaintiff filed suit).  It is the plaintiff's burden to establish that she filed her lawsuit within 90

days of receipt of the RTS letter.  Green v. Union Foundry Co., 281 F.3d 1229, 1233-34 (11th Cir. 2002).[4]

On October 10, 2017, Snyder filed an EEOC Charge against Delta alleging that her termination violated the ADEA.  (attached hereto as Exhibit "B.")[5]  On Friday March 30, 2018, the EEOC mailed the RTS on that Charge from its Miami office to Snyder's Miami residence address.  (attached hereto as Exhibit "C.")

Thus, applying the three postal business day presumption, Snyder received her RTS no later than Tuesday April 4, 2018.[6]  Thus, Snyder was required to file any ADEA claim in federal court by Monday July 2, 2018 (the 90th day after Tuesday, April 4, 2018).  However, she did not file this suit until July 6, 2018.  Thus, her ADEA claim is time-barred.[7]

---

[4] The failure of the plaintiff to pick up her mail does not extend the 90-day period. See Kerr v. McDonald's Corp., 427 F.3d 947, 953 (11th Cir. 2005).

[5] Snyder references her EEOC Charge and her RTS in her Complaint, and both are admitted administrative prerequisites for her ADEA claim. Thus, Delta can attach her Charge and RTS here without converting this motion to a motion for summary judgment.  Kynes v. PNC Mort., supra. at ** 9-13.

[6] As the postal service does business on Saturdays, Saturday is a postal business day for purposes of the three postal business day presumption.  See Pennington v. Gen. Dynamic Armament & Tech. Prods., Inc., 2018 U.S. Dist. LEXIS 93404 * 6 (W.D. Va. July 3, 2013)(claim dismissed because RTS was mailed on Thursday July 28, 2012 and lawsuit was filed more than 90 days after presumptive RTS receipt date of Monday July 2, 2012).

[7] While not alleged in her original Complaint, in her FAC, Snyder alleges that the EEOC sent her RTS to her via U.S. mail. Dkt. 11, ¶ 51.  She alleges that she

### 2. Snyder Fails To Assert Facts That Could Plausibly Support An ADEA Claim.

Snyder first alleges that she was terminated because of her age in violation of the ADEA.  Dkt. 11, ¶ 46.  To state a claim that a termination violated the ADEA, the plaintiff's complaint must "provide enough factual matter to plausibly suggest intentional [age] discrimination."  Buchanan v. Delta Air Lines, Inc., 2018 U.S. App. LEXIS 9094 (11th Cir. Apr. 9, 2018).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id.  (quoting Iqbal, at 678).  To survive a motion to dismiss, the complaint must "raise her right to relief above a speculative level" and must contain sufficient factual matter to state a claim that is plausible on its face.  Id.  In an ADEA claim, the plaintiff must prove that her age was the "but for" cause for her termination, i.e., that "but for" her age,

---

nonetheless never received the RTS.  Id.  She alleges that the letter was sent with a tracking number that continues to show the letter is in "transit."  Id.  She alleges that her daughter (then acting as her attorney) received her RTS from the EEOC by email on April 15, 2018.  Dkt. 11, ¶ 52.  These bare allegations are insufficient for Snyder to meet her burden of showing she filed a timely ADEA lawsuit.  Snyder does not include the alleged tracking number in her FAC or explain why the EEOC would in this case send a RTS by more expensive priority mail (which has a tracking number) when sending a letter from Miami to Miami.  She has not alleged sufficient specific facts to plausibly support a claim that the EEOC mailed a RTS across Miami on March 30, 2017 and that RTS has still not been delivered.

13

she would not have been terminated.  Id. (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

As it relates to her FAA drug test and her termination, in her FAC, Snyder alleges: (1) she underwent an FAA drug test; (2) she learned that her FAA test was positive for cocaine; (3) she did not use cocaine; (4) Delta did not consider her post-FAA drug tests; and (5) an entirely implausible (indeed, absurd) nonfactual conspiracy theory speculating that the collector might have adulterated one of her two specimens with cocaine after Snyder left the collection site and did so solely because of Snyder's age.  Dkt. 11, ¶¶ 9-33.  All of her other allegations about her termination are mere boilerplate conclusory allegations (such her bare allegations that Delta discriminated against her because of her age and that her failing a drug test was a pretext for age discrimination) and thus can be disregarded in considering this motion to dismiss.  Iqbal, 129 S. Ct. at 1951.

As it relates to her FAA drug test, Snyder alleges no facts or even conclusory allegations that she was treated differently because of her age.  As it relates to the positive result of her FAA drug test, Snyder does not (and cannot) dispute that her test was positive for cocaine and that Delta was informed that the test was verified as positive for cocaine by the MRO.  Like many who test positive on FAA drug tests, she simply denies that she used the illegal drug that was found

14

in her urine.  Under OTETA and the FAA regulations, an employee's denial that she used the drug for which she tested positive is and legally must be immaterial.

With respect to her allegation that the MRO and Delta did not consider her private tests taken days after her FAA drug test, as set forth above, such tests could not be considered as a matter of law.

Finally, her admittedly speculative conspiracy theory of collector adulteration is not only completely implausible, even if it were true, it would not explain her positive cocaine test and would provide no basis for an ADEA claim.

Citing to 49 CFR § 40.71 Snyder first alleges that, after one of her two vials became unsealed, the law does not include a provision allowing the collector to pour the urine from that unsealed vial into a new vial and then seal that new vial. Dkt. 11, § 17.  That the cited regulation does not specifically allow a collector to perform this task does not mean that it was impermissible for the collector to do so. Indeed, the regulations *require* that the collector end the process with two sealed specimen bottles (the regulations only prohibits mixing two voids in one bottle). Thus, if the collector abandoned the collection simply because one of the specimen bottles would not seal or the seal became unsealed for any reason, as the regulations do not state that any such minor event allows a canceled test, *it would be improper* for the collector to have canceled the test.  Thus, Snyder's legal claim

(as it is not a factual allegation) that the alleged process was not specifically permitted by the regulations is legally immaterial to this motion.[8]

Snyder then asserts her totally implausible and ultimately immaterial theory that again is not a factual allegation. Snyder speculates the following theory:

- Delta wanted to get Snyder fired because of her age and use a positive cocaine test to do so and thus may have directed the collector to select Snyder (of the large number of "older" Delta Flight Attendants) to adulterate one of Snyder's two specimens with cocaine. Dkt. 11, ¶¶ 16, 18.

- The collector intentionally broke the seal of one of the vials and, after Snyder left the collection site, the collector "negligently and/or intentionally contaminated the vial causing the test to provide a false

---

[8] Snyder alleges in her FAC that Delta improperly did not investigate any claim that it was improper for the collector to use a new vial to make sure that specimen was sent to the lab in a sealed bottle. Dkt. 11, ¶ 47. As a threshold matter, in the April 25, 2017 email that Snyder sent to her email that she relied upon in her FAC, Snyder made no reference to the collection process at all – let alone make any claim that anything improper had occurred during the collection. Exhibit "A." Moreover, as stated above, the process Snyder alleges is not improper under the regulations in any way, and Snyder was unable to allege otherwise. Finally, none of this has or could plausibly have anything to do with Snyder's age.

negative without evidence that the vial had been post-contaminated."

Dkt. 11, ¶ 21.[9]

As a threshold matter, these are not factual allegations and thus should be ignored in reviewing a motion to dismiss. These are instead "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" that should be ignored. Ogletree, supra. at * 13 (and cases cited therein).

Moreover, the admitted speculative theory is not only not plausible but is preposterous. Snyder alleges no facts that could render her theory plausible. She is instead grabbing at straws because she knows she has no ADEA or any other legal claim here.

Indeed, even if Snyder's adulteration speculation were true, it would not explain her positive test result because the collector would have had to have adulterated *both vials* for both Snyder's specimen "A" and "B" to test positive for cocaine as both had to be positive for her to have a confirmed positive test. Thus, her implausible speculation does not explain why she tested positive for cocaine.

Indeed, even Snyder recognizes the implausibility of her theory and alleges that the collector may have only "negligently" adulterated her second vial with

---

[9] As it was not asserted in her original Complaint, Snyder hatched this "theory" only after Delta filed its first motion to dismiss. In doing so, she only made an implausible ADEA claim to be even more implausible.

cocaine.  If so, that negligence could not be the premise or an ADEA claim (or any other claim) as the ADEA requires intentional discrimination.   Moreover, Snyder does not even attempt to assert a theory as how it could be that the collector could "negligently" adulterate her urine with cocaine.

Finally, none of these implausible speculations have anything to do with Snyder's age.  Snyder admits that she tested positive for cocaine on an FAA positive drug test.  She was therefore disqualified from her position by federal law – Delta had no choice but to remove her or it would have violated OTETA (and violated its safety policies) to do otherwise.  Not only is there no plausible fact supporting an age discrimination claim in the FAC, the FAC allegations and the law render it to have been literally impossible for Snyder's age to have been any factor (let alone the required "but for" factor) in Delta's removal of Snyder.

Presumably because she realizes she has no facts connecting her termination for testing positive on an FAA drug test with her age, Snyder included in her FAC some of the allegations lodged by the plaintiff in Buchanan v. Delta Air Lines, Inc., 2018 U.S. App. LEXIS 9094 (11th Cir. Apr. 9, 2018).

Buchanan is immaterial for the simple reason that it does not involve a termination for a positive FAA drug test that was mandated by OTETA.  In Buchanan, Buchanan alleged that Delta claimed it terminated her for violating

Delta's companion travel policies.  Buchanan, at * 3.  Buchanan made the following allegations about her termination:  "[She] did not actually violate the travel companion policies for which she was investigated and that the company had no evidence that she violated any polices."  Id.

   In sharp contrast, Snyder does not (and cannot) allege that she did not test positive for cocaine on her FAA drug test -- and certainly cannot allege that Delta "had no evidence that she violated any policies."  Buchanan, at * 3.  Instead, she only denies using cocaine and claims she later had negative tests from her personal physicians – allegations that are *as a matter of law* immaterial under OTETA and thus under the ADEA.  She also does not (and again cannot) allege that Delta had no evidence that she tested positive on her FAA drug test.  To the contrary, she does not deny her positive test but simply denies it was correct.  Buchanan does not and legally cannot apply to this case involving a Flight Attendant Delta was legally required to randomly test and was legally required to be removed when she tested positive.[10]   Snyder's ADEA claim should be dismissed.

---

[10] Snyder parrots other allegations in Buchanan's complaint including speculating about Delta's hiring practices, quotes from Delta's CEO about millennials, misquoting a headline on Delta's website, and other EEOC Charges allegedly filed by other Delta Flight Attendants with no finding of discrimination by Delta.  None of those allegations have anything to do with FAA drug testing at Delta or Snyder's termination for her positive FAA drug test.  Some of them were deemed relevant in

### D.  Buchanan's FCRA Claim Should Be Dismissed.

Snyder next alleges an unspecified discrimination claim under the Florida Civil Rights Act ("FCRA").  This claim fails to state a cause of action for a number of independent reasons.

First, any FCRA claim is time-barred for the same reason her ADEA claim is time-barred. Curry v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 169482 (M.D. Fla. Nov. 29, 2012)(dismissing Title VII and FCRA claim for failure to file within 90 days of receipt of RTS).

Second, Snyder admits that she was employed by Delta in Georgia, had her urine collected in Georgia and that she believes that the challenged termination decision was made in Georgia.  Dkt. 11, ¶¶ 2, 74.  Thus, she does not allege any purported discrimination against her by Delta in Florida.

Third, she fails to allege any type of employment discrimination that is prohibited by FCRA.  Finally, even if she had alleged age discrimination under the FCRA, that claim would fail to state a cause of action for the same reason she did not state an ADEA cause of action.  Thus, this claim should also be dismissed.

---

Buchanan but only because Buchanan denied violating Delta's policy (here Snyder tested positive as a matter of law) and Buchanan alleged that Delta had no evidence that she violated Delta policy (here Buchanan admits that Delta informed her that she tested positive on an FAA drug test – which required her removal as a matter of federal law).

**F**.  **Snyder's "Hostile Work Environment" Claim Should Be Dismissed.**

Snyder next alleges that Delta created a hostile work environment ("HWE"). Dkt. 11, ¶ 59.  This claim fails to state a claim for a number of different reasons.

First, Snyder alleges no discriminatory basis for the alleged HWE.  There is no law that prohibits a general HWE, and the law only prohibits one if it is based on some legally protected status.

Second, if Snyder is alleging HWE based upon her age in violation of the ADEA, she filed no EEOC Charge alleging HWE in violation of the ADEA.  Her charge instead only alleged that her termination violated the ADEA.  Exhibit "A." Thus, she has failed to exhaust required administrative prerequisites for an ADEA HWE claim.  See Canty v. Fry's Elecs., Inc., 736 F. Supp. 2d 1372, 1373 (N.D. Ga. 2010)(dismissing claim for failing to include it in Title VII Charge)

Third, even if her Charge alleged HWE under the ADEA, her claim would be time-barred for the reasons set forth above.

Fourth, she alleges not a single fact that could support an age-based HWE claim.[11]  Thus, she asserts no facts that could plausibly support an HWE claim.

---

[11] In her HWE Count, Snyder alleges only that "Delta targets older workers with drug tests that are supposed to be random, but are not, and are in fact targeted at older workers in order to intentionally harass them."  Dkt. 11, 63.  This assertion is legally immaterial for a myriad of reasons.  First, Snyder admits that her positive

Phillips v. City of Atlanta, 2016 U.S. Dist. LEXIS 13260 ** 64-66 (N.D. Ga. July 29, 2016) (dismissing HWE claim for failure to allege facts that could plausibly support an HWE claim).  Thus, this claim should also be dismissed.

### F.  **Snyder's Title VII Claim Should Be Dismissed.**

Snyder next alleges that Delta discriminated against her in violation of Title VII.  This claim also fails for a number of reasons.

First, the only form of discrimination Snyder alleges in her FAC is age discrimination, and Title VII does not prohibit age discrimination.  Second, Snyder never filed a Title VII EEOC Charge against Delta and thus she failed to exhaust required administrative remedies under Title VII.   Canty, supra.  Third, even if her Charge included a Title VII claim, it would be time-barred.  Fourth, she in any event does not allege a single fact even referencing – let alone plausibly supporting – a Title VII claim.

---

test was one where she "was randomly selected for drug testing." Dkt. 11, 9. Thus, she admits that she was not targeted with a non-random test.  Second, she alleges no facts to support her nonfactual assertion that Delta does not follow the FAA random selection process.  Moreover, particularly for a Flight Attendant who is subject to random drug tests on a regular basis, an FAA drug test could never be the basis for a HWE claim.  Indeed, if she had not used cocaine, whether the test was random would be immaterial to her claim. Thus, if anything, Snyder is here implicitaly admitting she used cocaine.

**F**.  <u>**Snyder's "Wrongful Termination" Claim Should Be Dismissed**</u>.

Finally, Snyder alleges a claim of "wrongful termination" under state law based on an alleged violation of some unspecified state public policy. This claim also fails for independent reasons.

First, it has been well-settled for decades that there is no such wrongful termination based on a public policy cause of action for an at-will employee like Snyder terminated in Georgia.  <u>Lee v. Christian</u>, 98 F. Supp. 3d 1265 (S.D. Ga. 2015)(alleged discrimination prohibited by federal law cannot support a wrongful termination claim in Georgia); <u>Borden v. Johnson</u>, 196 Ga. App. 288 (1990)(at-will plaintiff alleging termination due to gender can state no public policy termination claim under Georgia law).[12]

Second, even if there were a wrongful termination claim based on alleged age discrimination, Snyder has again failed to allege facts that could support such a claim.  Finally, a state law could not prohibit Delta from terminating an employee

---

[12] Snyder seeks to allege this claim under Georgia and/or Florida law.  Such a claim of course cannot be under two state laws.  Her factual allegations establish it could only be Georgia law.  In any event, Florida law has the same law as Georgia here – there is no public policy wrongful termination for an at-will employee under Florida law.  <u>Weld v. Southeastern Cos., Inc</u>., 10 F. Supp. 2d 1318, 1321. 1322 (M.D. Fla. July 8, 1998).

for a positive FAA drug test as any such law would be preempted by OTETA.  <u>MN</u>

<u>Airlines, Inc. v. Levander</u>, 2015 U.S. Dist. LEXIS 114251 * 3 (D. Minn. Aug. 28,

2015); 49 U.S.C. § 45106.

<div style="margin-left: 40%;">
Respectfully submitted,


s/Thomas J. Munger_____
Georgia Bar No. 529609
</div>

MUNGER & STONE, LLP
999 Peachtree Street, N.E.
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0829
Facsimile: (404) 815-4687
E-mail:  tom.munger@mungerandstone.com

<div style="margin-left: 40%;">
Attorneys for Defendant
</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1B

Respectfully submitted,

<u>s/Thomas J. Munger</u>
Georgia Bar No. 529609

MUNGER & STONE, LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0829
Facsimile: (404) 815-4687
E-mail:  tom.munger@mungerandstone.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **NANCY SNYDER,**<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>**DELTA AIR LINES, INC.,**<br><br>        **Defendant.** | **Civil Action No. 1:18-CV-03254-LMM-RGV** |

## CERTIFICATE OF SERVICE

This is to certify that I have this 4th day of September, 2018 served the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to:  Joseph Alan White, Matthew Benjamin Weisberg, and Brian Mildenberg.


                                        s/Thomas J. Munger
                                        Georgia Bar No. 529609

26