## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA (Atlanta)

NANCY SNYDER                              :
                                         :
            v.                           :        NO.   1:18-cv-03254
                                         :
DELTA AIR LINES, INC.                    :

## ORDER

**AND NOW**, this _____ day of _____, 2018, upon consideration of Defendant, Delta Air Lines, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, and Plaintiff, Nancy Snyder's Response in Opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion to Dismiss is **DENIED**.

It is further **ORDERED** and **DECREED** that Defendant, Delta Air Lines, Inc. shall file an Answer within twenty (20) days of the date of this Order.

BY THE COURT:


_____
U.S.D.J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA (Atlanta)

NANCY SNYDER                          :
                                      :
        v.                            :      NO.   1:18-cv-03254
                                      :
DELTA AIR LINES, INC.                 :

---

### PLAINTIFF, NANCY SNYDER'S RESPONSE IN OPPOSITION TO DEFENDANT, DELTA AIR LINES, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Incorporating by reference Plaintiff's attached Memorandum of Law, Plaintiff, Nancy Snyder, by and through her undersigned counsel, respectfully requests this Honorable Court deny Defendant, Delta Air Lines, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, or, in the alternative, grant Plaintiff leave to amend her Complaint.

**WHEREFORE**, Plaintiff, Nancy Snyder, respectfully requests this Honorable Court enter the attached Order denying Defendant, Delta Air Lines, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint.

Respectfully submitted,

**FRIED & BONDER, LLC**

*/s/ Joseph A. White*
Joseph A. White
Georgia Bar No. 754315
Fried & Bonder, LLC
White Provision, Suite 305

2

1170 Howell Mill Rd.,
NW Atlanta, Georgia 30318
Phone: (404) 995-8808
Fax: (404) 995-8899
Jwhite@friedbonder.com
Attorney for Plaintiff

**MILDENBERG LAW FIRM**

*/s/ Brian R. Mildenberg*
Brian R. Mildenberg, Esq.
PA Attorney ID No. 84861
1735 Market St., Suite 3750
Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
brian@mildenberglaw.com
www.MildenbergLaw.com
Attorney for Plaintiff, *pro hac vice*

**WEISBERG LAW**

*/s/ Matthew B. Weisberg*
Matthew B. Weisberg, Esq.
PA Attorney ID No. 85570
7 South Morton Ave
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
MWeisberg@WeisbergLawOffices.com
Attorney for Plaintiff, *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA (Atlanta)

| | | |
|---|---|---|
| NANCY SNYDER | : | |
| | : | |
| v. | : | NO.   1:18-cv-03254 |
| | : | |
| DELTA AIR LINES, INC. | : | |

## PLAINTIFF, NANCY SNYDER'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, DELTA AIR LINES, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Nancy Snyder, by and through her undersigned attorneys, hereby provides her Memorandum of Law in Support of her Response in Opposition to Defendant, Delta Air Lines, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint ("Pl. Oper. Compl.") as follows:

## I.   OPERATIVE FACTS

Plaintiff, Nancy Snyder, is an adult individual who was employed by Defendant, Delta Air Lines, as a flight attendant based out of Atlanta, Georgia. *See* Pl. Oper. Compl., ¶ 2. Plaintiff has been employed with Delta since on or about March 12, 2000. *Id.* A loyal flight attendant for over 18 years, Plaintiff always provided her customers with exceptional service. *See* Pl. Oper. Compl., ¶ 8. In 2017, Plaintiff's salary was approximately $100,000 per year. Upon information

and belief, Delta could hire at least 3-4 first time flight attendants for the same amount of money they were paying Plaintiff yearly. *See* Pl. Oper. Compl., ¶ 44.

In April 2017, Plaintiff was returning home from working a Lima, Peru flight when she was "randomly selected" for drug testing. *See* Pl. Oper. Compl., ¶ 9. When Plaintiff arrived at the lab for testing, it was crowded as many employees were being tested that morning. *See* Pl. Oper. Compl., ¶ 10. Plaintiff was first given an alcohol test which came back negative. *See* Pl. Oper. Compl., ¶ 11. Plaintiff then gave a urine sample for drug testing. *See* Pl. Oper. Compl., ¶ 12.

After providing her sample, Plaintiff's sample was put into two sealed tubes by the lab technician. *See* Pl. Oper. Compl., ¶ 13. As Plaintiff was washing her hands and preparing to leave, the lab technician *intentionally* broke the seal on one of the tubes and stated to Plaintiff that she had to change the tube. *See* Pl. Oper. Compl., ¶ 14. Plaintiff picked up a new tube, handed it to the technician and left. *See* Pl. Oper. Compl., ¶ 15. Plaintiff did not initial the new tube, nor was she requested to, pursuant to 49 CFR § 40.73(a)(1). *See* Pl. Oper. Compl., ¶ 21. The technician's *intentional* switching of the vials was at the *direction* of Delta to create pretext for the termination of Plaintiff. *See* Pl. Oper. Compl., ¶ 16. Following the intentional switching of the vials – which occurred after Plaintiff initialed the vials assuring their authenticity – the technician-collector *intentionally*

contaminated the vial causing the test to provide a false negative *without* evidence that the vial had been post-contaminated. *See* Pl. Oper. Compl., ¶ 21.

Pursuant to DOT Rule 49 CFR Part 40, Section 40.71, Subpart E – Urine Specimen Collections, there is no provision allowing for switching a vial in a split test after the urine has already been separated into two vials. *See* Pl. Oper. Compl., ¶ 17. Delta *intentionally* failed to comply with the collection process and then *intentionally* refused to correct the failed process in order to *intentionally* create pretext for the termination of Plaintiff. *See* Pl. Oper. Compl., ¶ 18.

On April 25, 2017, Plaintiff received a telephone call informing her that her test results came back positive for cocaine. *See* Pl. Oper. Compl., ¶ 19. Plaintiff was shocked as she had never used cocaine. *See* Pl. Oper. Compl., ¶ 20. Plaintiff immediately emailed her supervisor, explaining what happened and requesting a retest. *See* Pl. Oper. Compl., ¶ 22. The next day on April 26, 2017, Plaintiff arrived at work and was informed that she was being suspended without pay pending an investigation. *See* Pl. Oper. Compl., ¶ 23. This was extremely upsetting and stressful to Plaintiff as she had not taken any drugs. *See* Pl. Oper. Compl., ¶ 24.

Wanting to get to the bottom of this, Plaintiff visited her primary care physician on April 27, 2017 and requested a drug screening to provide to Delta. Plaintiff took a urine test which came back negative for cocaine. *See* Pl. Oper. Compl., ¶ 25.

Plaintiff also underwent a hair strand drug test on April 29, 2017, since a hair strand test will come back positive for cocaine used in an approximate 90-day period preceding the test. *See* Pl. Oper. Compl., ¶ 26.

On April 29, 2017, Plaintiff contacted Delta to advise the company of the results of her urine test and inform it that she had also obtained a hair strand test. *See* Pl. Oper. Compl., ¶ 27. Delta informed Plaintiff that it did not have to accept these test results and that it was already considering terminating her. *Id.* This caused Plaintiff significant stress and anxiety as her career was at stake and she had not done anything wrong. *See* Pl. Oper. Compl., ¶ 28.

On May 3, 2017, Plaintiff's hair strand test came back negative for cocaine. *See* Pl. Oper. Compl., ¶ 29. On May 3, 2017, Plaintiff voluntarily underwent a blood test and another hair strand test at another lab in order to provide Delta definitive proof that she did not use cocaine. *See* Pl. Oper. Compl., ¶ 30. On that same date, Plaintiff contacted Delta again to inform the company of the results of her first hair strand test and requesting information regarding the review process of her inaccurate drug test. *See* Pl. Oper. Compl., ¶ 31. On May 8, 2017, second hair and blood screen came back negative for any type of drug use including cocaine. *See* Pl. Oper. Compl., ¶ 32.

Despite Plaintiff's negative drug tests, she was terminated from Delta on or about May 17, 2017. *See* Pl. Oper. Compl., ¶ 33. The firing of Plaintiff was an act

of discrimination, with no valid business purpose or justification. *See* Pl. Oper. Compl., ¶ 34.

Delta terminated Plaintiff for allegedly failing a drug test, but this was a pretext for discrimination because Plaintiff had not used any drugs and had four follow-up drug screens to prove it. *See* Pl. Oper. Compl., ¶ 35. The real reason was part of Delta's pattern and intent to discriminate against, discipline, discourage and terminate Plaintiff due to her age of 63 years old. *Id.*

Upon information and belief, Delta Air Lines has engaged in an illegal pattern and practice of intentionally discriminating and retaliating against senior employees based upon their age. *See* Pl. Oper. Compl., ¶ 36. Delta has publicly stated that it is turning its attention to millennials, those born from the early 1980's to the late 1990's. *See* Pl. Oper. Compl., ¶ 37. Delta's CEO, Edward Bastian, has said by 2020, half of Delta's customers will be millennials and it is anticipated that Delta's employees will mirror the same balance. *Is.*

Delta has engaged in a pattern and practice of using pretextual, embellished or untruthful allegations to terminate flight attendants who are over 40 years old. *See* Pl. Oper. Compl., ¶ 38. Delta targets older workers with drug tests that are supposed to be random, but are not, and are in fact targeted at older workers in order to intentionally harass them. *See* Pl. Oper. Compl., ¶ 39. Bastian stated during a 2016 interview, "There's no question that the face of Delta's employees is

changing, it's becoming younger…. We have got to stay ahead of that change and make certain our product and our service offerings are fresh." Delta News Hub, May 2, 2016. *See* Pl. Oper. Compl., ¶ 40. Delta's website, called DeltaNet highlighted its commitment to hiring a younger workforce, with a large headline: "Delta commits to hire young American workers for 'First Job'." *See* Pl. Oper. Compl., ¶ 41.

However, Delta has no plans of expanding its total number of flight attendants. *See* Pl. Oper. Compl., ¶ 42. Delta is not in a position to hire a large number of employees to fulfill their millennial goals without removing a significant number of Delta's senior employee pool. *See* Pl. Oper. Compl., ¶ 43. This means that Delta's older employees will have to leave their employment either voluntarily or involuntarily. *Id.* Upon information and belief, Delta has a de facto policy of terminating or disciplining older employees due to perceived or manufactured infractions of company rules. *See* Pl. Oper. Compl., ¶ 46.

In 2017, Delta released a reality show called "Earning Our Wings" about becoming a flight attendant. *See* Pl. Oper. Compl., ¶ 45. Upon information and belief, one of the motivations for this show was to attract younger "millennial" employee applicants. *Id.*

Upon information and belief, Delta fails to investigate allegations of actual fraud or impropriety with regard to drug tests for older workers, due to the

pretextual desire to terminate older workers because of their age. *See* Pl. Oper.

Compl., ¶ 47. For instance, with regard to Plaintiff, instead of investigating her

allegation that the Delta urine collection impermissibly unsealed her urine vial and

switched vials, Delta has refused to correct or look into same, or to admit or

declare the test invalid – particularly in the face of such exonerating evidence –

due to a pretextual desire to terminate Plaintiff as a senior Flight Attendant. *Id.*

Upon information and belief, from publicly available sources:

a.      Delta's most recent incoming classes of flight attendants have been

predominantly under 30 years old.

b.      Upon information and belief, a Delta flight attendant based in Detroit,

"Employee A", who flies throughout the system, observed that the ages of

flight attendants was going down, mostly because incoming classes were

predominantly young people.

c.      Employee A felt that it was obvious that Delta was getting rid of older

flight attendants so they could be replaced by younger ones.

d.      Employee A learned of multiple cases where older Delta employees

were terminated for false reasons or trivial reasons that would not have

warranted termination in past years.

e.      Employee A is over 40 years old and began working as a flight

attendant for Northwest Airlines before its merger with Delta in 1979. Based

upon her observation (and pursuant to the flight attendant seniority lists that she has seen) the total number of flight attendants in the employ of Delta Air Lines has not been expanding -- yet young flight attendants now dominate the incoming ranks. Employee A further stated this means that Delta is replacing older flight attendants in increments. Older flight attendants are being phased out -- by forced retirement and involuntary termination -- in favor of younger flight attendants, according to said Employee A.

f.      The EEOC's Miami office is investigating claims of age discrimination by Delta Air Lines in which the corporation fired or forced out older flight attendants. The victims have claimed false, exaggerated or pretextual reasons for the adverse actions against them.

g.      Another Delta Flight Attendant, "Employee B," who was first hired as a flight attendant in 1978 with Northwest Airlines prior to its merger with Delta, is 74 years old. According to her sworn EEOC charge, she was forced to retire for an alleged violation of company policy, which alleged violation "had not caused the termination of younger employees. Thus, I was forced to resign (retire) because of my age." Employee B's EEOC charge included a formal charge of age discrimination.

h.      Employee B's sworn EEOC charge, stated, further, that, "I think there is a provable trend at Delta to rejuvenate its work force, i.e. make it younger.

What I mean by that is that it is terminating (or forcing termination of) older employees upon false or trivial accusations or at least accusations that previously would have warranted lesser discipline, such as letters of reprimand and/or suspensions. What this means is that older employees are being let go or forced out and replaced with younger employees earning fractionally less than their predecessors. Delta is even resorting to false or exaggerated allegations." Thus, the complainant identified age discrimination and pretext in the reasons selected to fire her.

i.      According to the EEOC charge of another Delta flight attendant, "Employee C", he was over 40 years old when fired from Delta and alleged in his EEOC charge that the company committed age discrimination against him. He claimed that, "there is a provable trend at Delta to 'rejuvenate' its work force, i.e. make it younger. What I mean by that is that it is terminating older employees upon false or trivial accusations or at least accusations that previously would have warranted lesser discipline, such as letters or reprimand and/or suspensions." Thus, the complainant identified age discrimination and pretext in the reasons selected to fire him.

j.      According to another EEOC charge, with similar accusations, Delta is getting rid of older flight attendants to make room for young ones, thus, age discrimination had been committed, according to the sworn EEOC charge.

12

The complainant was 67 years old when fired for reasons that he claimed under oath would not have caused termination previously. This was done to make room for young flight attendants. He had worked for Delta and Northwest Airlines as a flight attendant since 1987. Thus, the complainant identified age discrimination and pretext in the reasons selected to fire him.

k.      Upon information and belief, according to allegations in federal court pleadings, several other Delta flight attendants have also noted the trend of getting rid of older flight attendants to be replaced by young ones. One stated that all new hires as flight attendants are in their mid-20s and early 30s. Another stated that Delta Air Lines was obviously moving to terminate its older flight attendants to make room for new ones who were completing their training classes.  Trivial reasons were selected to force out older flight attendants, which reasons would not have caused significant discipline at all in prior years, they informed plaintiff.

*See* Pl. Oper. Compl., ¶ 48.

The firing of Plaintiff was pretextual. *See* Pl. Oper. Compl., ¶ 49. Plaintiff had an exceptional work record, and never violated any Delta policies. *Id.* She had a great reputation with her customers. *Id.* Plaintiff's termination was pretextual for age discrimination. *Id.*

13

Plaintiff has exhausted said remedies after filing with the EEOC and other state agencies and has obtained a right-to-sue letter. *See* Pl. Oper. Compl., ¶ 50. This action is filed within 90 days of the receipt of Plaintiff's right to sue letter from the EEOC. *Id.* At some point prior to April 15, 2018, the EEOC sent Plaintiff her right-to-sue letter via U.S. Mail with a tracking number. *See* Pl. Oper. Compl., ¶ 51. However, Plaintiff never received the mailed letter and tracking number provided by the EEOC continues to show that the letter is in "transit." *Id.* Nonetheless, Plaintiff's daughter – and then acting attorney – received the right-to-sue letter on behalf of Plaintiff from the EEOC via email from the EEOC on April 15, 2018. *See* Pl. Oper. Compl., ¶ 52.

## II.  STANDARD

### A.  MOTION TO DISMISS:

In reviewing a Motion to Dismiss under Rule 12(b), the Court must "accept as true the factual allegations" in operative complaint *and* "construe the facts in the light most favorable to plaintiff as the non-moving party." *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) *citing Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir.2004) (citation omitted). The Court may only grant a Motion to Dismiss when a defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id. citing Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) (internal

14

quotation and citation omitted). In fact, a Plaintiff need not plead any causes of action (merely facts with request for relief). *See* 2 James Wm. Moore et al., *Moore's Federal Practice* P 8.04[3].

## B.  AMENDED PLEADING

A Plaintiff should be provided an opportunity to amend her complaint if it appears that the deficiencies can be corrected. *See,* 2A J. Moore, *Moore's Federal Practice* ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *accord*, FRCP 15(a)(2) (The Court should freely give leave to amend a Complaint "when justice so requires.").

## C.  CONCLUSION:  STANDARD

When applying the correct standard, Plaintiff's Operative Complaint sufficiently states specific facts supporting a claim for violations of the Age Discrimination in Employment Act and Florida Civil Rights Act against Defendant, Delta Air Lines, Inc. and Defendant's Motion should be denied. In the alternative, Plaintiff should be granted leave to amend as this Honorable Court is, respectfully, directed to allow. Otherwise, state law claims should be dismissed without prejudice to the state court.

## III.  ARGUMENT

### A.  PLAINTIFF PLED SUFFICIENT FACTS TO SHOW THE COLLECTOR INTENTIONALLY COLLECTED THE SPECIMINS IN VIOLATION OF THE LAW CONCERNING FAA DRUG TESTS, RENDERING THE RESULTS BARRED FROM CONSIDERATION.

Plaintiff, Nancy Snyder, pled sufficient facts to show the collector intentionally collected the specimens in violation of the law concerning FAA drug tests rendering the results barred from consideration, particularly when accepting all factual allegations as true and construing the Plaintiff's Operative Complaint in the light most favorable to Plaintiff. *See generally* Pl. Oper. Compl. *See also Kirwin*, 391 F.3d at 1325 (citation omitted). *See also* 49 CFR § 40.151.

FAA regulations set forth a *comprehensive scheme* regarding FAA drug tests. *See MN Airlines, Inc. v. Levander,* 2015 U.S. Dist. LEXIS 114251 * 3 (D. Minn Aug. 28, 2015). The collector violated the FAA's *comprehensive scheme* in two material ways.

First, the collector was required by law to handle the collected specimen in a very specific way. *See* 49 CFR § 40.71(b). The FAA's *comprehensive scheme* dictates the exact milli-liters of specimen to collect; the order in which to place the specimen in vials; and the procedure to seal each bottle. *Id.* Here, when applying the appropriate standard, the collector *intentionally* broke the seal on one of the tubes and stated to Plaintiff that she had to change the tube. *See* Pl. Oper. Compl., ¶ 14. There is no procedure or regulation in FAA's *comprehensive scheme* for then pouring the specimen into another tube. Rather than violating FAA's *comprehensive scheme* for the collection of the specimen, the collector was required to start the entire process over.

16

Second, FAA's *comprehensive scheme* **requires** the collector to seal the specimen vials in the employees' presence and have the employee "initial the tamper-evident bottle seals for the purpose of certifying that the bottles contain the specimens he or she provided." *See* 49 CFR § 40.71(b). Here, when applying the appropriate standard, the collector failed to secure the specimen in Plaintiff's presence or have Plaintiff initial the tamper-evident bottle seal on the new vial. *See* Pl. Oper. Compl., ¶ 15, 21.

Despite knowledge of the two previous material violations of the FAA's *comprehensive scheme,* (*see* Pl. Oper. Compl., ¶ 22), Defendant, Delta Air Lines, Inc. intentionally violated the FAA regulations by considering the results of the contaminated urine sample that were not collected in accordance with FAA regulations. *See* 49 CFR § 40.151. ("You must not consider any evidence from tests of urine sample or other bodily fluids or tissues (e.g., blood or hair samples) that are not collected or tested in accordance with this part."). In other words, upon learning that the collector failed to follow the FAA regulations on specimen collection, Defendant was barred *by law* from considering the results.

### B.   PLAINTIFF APPROPRIATEY PLED SUFFICIENT FACTS TO SUPPORT A CLAIM UNDER THE AGE DISCRIMINATION IN EXPLOYMENT ACT.

Plaintiff, Nancy Snyder, pled sufficient facts to support a claim under the Age Discrimination in Employment Act ("ADEA"), particularly when accepting

17

all factual allegations as true and construing the Plaintiff's Operative Complaint in the light most favorable to Plaintiff. *See generally* Pl. Oper. Compl. *See also Kirwin*, 391 F.3d at 1325 (citation omitted).

When accepting the factual allegations as true and construing the Plaintiff's Operative Complaint in the light most favorable to Plaintiff, Defendant was barred by law from considering the results of the urine sample as the specimen were not taken in accordance with FAA regulations. *See* Section A above. In conformity with its current *modus operandi* in an attempt to make its work force younger, Defendant ignored the law and violations of the FAA regulations concerning specimen collection in order to create pre-text to fire Plaintiff, an older and well-paid employee. *See* Pl. Oper. Compl., ¶¶ 35-49. Defendant's attempts to apply a contra-standard must be ignored. *See also Kirwin*, 391 F.3d at 1325 (citation omitted). As Plaintiff pled sufficient facts to support a claim under the Age Discrimination in Employment Act, Defendant's Motion should be denied.

## 1. PLAINTIFF APPROPRIATEY PLED SUFFICIENT FACTS TO DEMONSTRATE THAT SHE TIMELY FILED THIS MATTER.

Plaintiff appropriately pled sufficient facts to demonstrate that she timely filed this matter, particularly when accepting all factual allegations as true and construing the Plaintiff's Operative Complaint in the light most favorable to Plaintiff. *See* Pl. Oper. Compl., ¶¶ 50-52. *See also Kirwin*, 391 F.3d at 1325

(citation omitted).  It is well established (and admitted in Defendant's Memorandum) that an ADEA claim must be filed within 90 days *of receipt* of the EEOC right to sue letter ("RTS").

Here, Plaintiff filed with ADEA claim within 90 days *of receipt* of the EEOC right to sue letter. *See* Pl. Oper. Compl., ¶¶ 50-52. Plaintiff pled that although the EEOC mailed the RTS to her prior to April 15, 2018, Plaintiff never received the letter. *See* Pl. Oper. Compl., ¶ 51. In fact, the tracking number provided by the EEOC continues to show that the letter is in "transit." *Id.* Instead, Plaintiff's daughter – and then acting attorney – received the right-to-sue letter on behalf of Plaintiff from the EEOC via email from the EEOC on April 15, 2018. *Id.* This Honorable Court must accept these well-pled factual averments as true. *See also Kirwin*, 391 F.3d at 1325 (citation omitted). As such, Plaintiff was required to file this action by July 14, 2018. As this action was initiated on July 6, 2018, it was timely and Defendant's Motion should be denied.

**C.    PLAINTIFF APPROPRIATEY PLED SUFFICIENT FACTS TO SUPPORT A CLAIM UNDER THE FLORIDA CIVIL RIGHTS ACT.**

Plaintiff, Nancy Snyder, pled sufficient facts to support a claim under the Florida Civil Rights Act ("FCRA"), particularly when accepting all factual allegations as true and construing the Plaintiff's Operative Complaint in the light

most favorable to Plaintiff. *See generally* Pl. Oper. Compl. *See also Kirwin*, 391 F.3d at 1325 (citation omitted).

First, the FCRA is timely for the same reasons set forth in Section B(1) above. Second, Plaintiff suffered the well-pled age discrimination as articulated in Section B above. Third, the FCRA is applicable to this matter as the termination communication was made in Florida. *See* Pl. Oper. Compl., ¶ 74. As Plaintiff pled sufficient facts to support a claim under the FCRA, Defendant's Motion should be denied.

### D.   PLAINTIFF'S REQUEST TO AMEND IF NECESSARY.

To the extent this Honorable Court finds Plaintiff's Operative Complaint defective, Plaintiff respectfully requests leave to amend to "provide further specifics" concerning Defendant's discrimination. *See,* 2A J. Moore, *Moore's Federal Practice* ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *accord*, FRCP 15(a)(2).

## IV.   CONCESSIONS

Plaintiff respectfully withdraws Count III (Hostile Work Environment), Count IV (Violation of Title VII), and Count V (Wrongful Termination in Violation of Public Policy).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff, Nancy Snyder, respectfully requests this Honorable Court enter the attached Order denying Defendant, Delta Air Lines,

Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, or, in the
alternative, grant Plaintiff leave to amend her Complaint.

**WHEREFORE**, Plaintiff, Nancy Snyder, respectfully requests this
Honorable Court enter the attached Order denying Defendant, Delta Air Lines,
Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint.

Respectfully submitted,

**FRIED & BONDER, LLC**

*/s/ Joseph A. White*
Joseph A. White
Georgia Bar No. 754315
Fried & Bonder, LLC
White Provision, Suite 305
1170 Howell Mill Rd.,
NW Atlanta, Georgia 30318
Phone: (404) 995-8808
Fax: (404) 995-8899
Jwhite@friedbonder.com
Attorney for Plaintiff

**MILDENBERG LAW FIRM**

*/s/ Brian R. Mildenberg*
Brian R. Mildenberg, Esq.
PA Attorney ID No. 84861
1735 Market St., Suite 3750
Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
brian@mildenberglaw.com
www.MildenbergLaw.com
Attorney for Plaintiff, *pro hac vice*

**WEISBERG LAW**

*/s/ Matthew B. Weisberg*
Matthew B. Weisberg, Esq.
PA Attorney ID No. 85570
7 South Morton Ave
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
MWeisberg@WeisbergLawOffices.com
Attorney for Plaintiff, *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA (Atlanta)

| | | |
|---|---|---|
| NANCY SNYDER | : | |
| | : | |
| v. | : | NO.   1:18-cv-03254 |
| | : | |
| DELTA AIR LINES, INC. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew B. Weisberg, Esquire, hereby certify that on this 2nd day of

October, 2018, a true and correct copy of the foregoing Plaintiffs' Response in

Opposition to Defendant's Motion to Dismiss, and Plaintiff's Memorandum of

Law in support thereof was served via ECF upon the following parties:

Thomas J. Munger, Esquire
Munger & Stone
999 Peachtree Street, NE, Suite 2850
Atlanta, GA 30309

**WEISBERG LAW**

*/s/ Matthew B. Weisberg*
Matthew B. Weisberg, Esquire
L. Anthony DiJiacomo, III, Esquire
*Attorneys for Plaintiff*